THE SEHAT LAW FIRM, P.L.C.
Cameron Sehat, Esq. (SBN: 256535)
18881 Von Karman Ave., Suite 850
Irvine, California 92612
Telephone: (949) 825-5200
Facsimile: (949) 313-5001
Email: cameron@sehatlaw.com

Attorney for Plaintiff, Terry Walton

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRY WALTON, individually, | Case No.: _____ |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| vs. | 1. Unreasonable Search and Seizure - Excessive Force (42 U.S.C. § 1983) |
| CULVER CITY, a governmental entity; MICHAEL KUTYLO, individually; JAMES GLADDEN, individually; MASON MCCORMICK, individually; THOMAS CALL, individually; CULVER CITY CHIEF OF POLICE SCOTT BIXBY, individually and in his official capacity; and DOES 1 through 10, | 2. *Monell* Liability for Custom, Policy and Practice (42 U.S.C. § 1983) |
| | 3. Failure to Train (42 U.S.C. § 1983) |
| | 4. Negligent Hiring, Training, Supervision (State) |
| Defendants. | 5. Battery (State) |
| | 6. Intentional Infliction of Emotional Distress (State) |
| | 7. Negligence (State) |
| | **DEMAND FOR JURY TRIAL** |

Plaintiff Terry Walton ("Plaintiff" or "Mr. Walton"), upon information and belief, alleges the following:

## INTRODUCTION

1. This case challenges the excessive force used by four Culver City Police Department Officers in executing a traffic stop and arrest of Plaintiff, Terry Walton.. Plaintiff was passive and compliant when Officers approached and were already in an aggressive and hostile demeanor due to Mr. Walton's size and race. Officers not only punched Mr. Walton numerous times about the back, neck, and head, he was also jumped on, and placed in a chokehold for the duration of the encounter between officers and Mr. Walton until he was rendered unconscious on two separate occasions during the arrest. Mr. Walton suffered a crushed voice box, cervical sprain, depression, post traumatic stress disorder, as well additional severe emotional distress and pain. This action is brought against the assaulting officers, Officer Michael Kutylo, Officer James Gladden, Officer Mason McCormick, Officer Call, their employer, Culver City and Culver City Chief of Police Scott Bixby.

2. The use of force against Plaintiff to seize his person was unconstitutional and violated clearly established law that would have been known to any reasonable peace officer.

## JURISDICTION AND VENUE

3. This case arises under 42 U.S.C. § 1983. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (e) in that (1) the unlawful actions challenged herein occurred in the Central District; and (2) all of the parties reside in the Central District.

## PLAINTIFF

5. Plaintiff, Terry Walton, at all relevant times was a resident of the County of Los Angeles, State of California.

///

## DEFENDANTS

6. Defendant Culver City ("City") is a government entity that acts through individuals and to establish its policies and is capable of being sued in federal court.

7. Defendant Michael Kutylo is a Police Officer, he was a duly authorized employee and agent of Culver City Chief of Police Scott Bixby and the City, and was acting under color of law within the course and scope of his perspective duties as a Police Officer and with the complete authority and ratification of his principals, City and Scott Bixby. Defendant Kutylo is being sued in his individual capacity.

8. Defendant James Gladden is a Police Officer, he was a duly authorized employee and agent of Culver City Chief of Police Scott Bixby and the City, and was acting under color of law within the course and scope of his perspective duties as a Police Officer and with the complete authority and ratification of his principals, City and Scott Bixby. Defendant Gladden is being sued in his individual capacity.

9. Defendant Mason McCormick is a Police Officer, he was a duly authorized employee and agent of Culver City Chief of Police Scott Bixby and the City, and was acting under color of law within the course and scope of his perspective duties as a Police Officer and with the complete authority and ratification of his principals, City and Scott Bixby. Defendant McCormick is being sued in his individual capacity.

10. Defendant Thomas Call is a Police Officer, he was a duly authorized employee and agent of Culver City Chief of Police Scott Bixby and the City, and was acting under color of law within the course and scope of his perspective duties as a Police Officer and with the complete authority and ratification of his principals, City and Scott Bixby. Defendant Call is being sued in his individual capacity.

11. Defendant Scott Bixby is the Chief of Police for the City. He is duly appointed and is vested with policy making and enforcement authority for defendants Culver City and its Police Department.

12. Plaintiff is unaware of the true identities and capacities of defendants DOES 1 through 10 but upon information and belief, said DOES are employees of Culver City

Chief of Police Scott Bixby and the City, inclusive. Each of the fictitiously named defendants is in some manner and to some extent liable for the injuries alleged in this Complaint. Plaintiff will seek leave to amend this Complaint to allege the true identities and capacities of those fictitiously named defendants when they are determined.

12. At all relevant times, the unknown named defendants were Officers of the Culver City Police Department and employees and agents of Culver City Chief of Police Scott Bixby and the City. Each defendant is, and at all times mentioned was, the agent, employee, representative, successor and/or assignee of each other defendant. At all times herein mentioned, each and every defendant had the legal duty to oversee and supervise the hiring, conduct, employment and discipline of each and every other defendant herein. Each defendant, in doing the acts, or in omitting to act as alleged in this Complaint, was acting within the scope of his or her actual or apparent authority, or the alleged acts and omission of each defendant as an agent subsequently were ratified and adopted by each other defendant as principal.

13. At all times relevant to this Complaint, each defendant acted under the color of state law.

14. Each of the individual defendants was in some way responsible for the constitutional violations alleged in this Complaint.

15. In committing the acts alleged in this Complaint, defendants acted knowingly, maliciously and with reckless or callous disregard for the constitutional rights of Plaintiff justifying an award of punitive damages under federal and California law against each individual defendant.

## FACTUAL ALLEGATIONS

16. This case challenges the excessive force used by four Culver City Police Department Officers in executing a traffic stop and arrest of Terry Walton. On February 4, 2017 Plaintiff was stopped for having paper plates and asked to exit the vehicle. Plaintiff was acting passively and compliant, with his hands behind his back, back facing the Officers, as Officers aggressively placed handcuffs on Mr. Walton. When Officers

were unable to place handcuffs on Mr. Walton, one officer, Officer Gladden, mounted and used his full body weight in an attempt to bring Mr. Walton to the ground. Officer Gladden applied a choke hold, arms firmly wrapped around Mr. Walton's neck and head until Mr. Walton was rendered unconscious. Officer Gladden applied force to Mr. Walton's throat area for approximately ten seconds, at which point Mr. Walton collapsed. Officer Gladden fell to the ground with Mr. Walton; Officer Kutylo, caught in the melee, lost his footing and fell to the ground as well. Both officers swarmed Plaintiff as he began regaining consciousness. Officer Gladden never let go of Mr. Walton's neck even as they fell to the ground and he maintained his hold on Mr. Walton's neck. Officer Kutylo jumped on Mr. Walton's torso as Mr. Walton lay on his right side, causing great damage to Mr. Walton's ribs due to the pressure caused by Officer Kutylo's jump and not releasing of said pressure against Mr. Walton's side. Mr. Walton rolled onto his stomach and presented himself in a complete prone position to Officers with his hands behind his back. Mr. Walton was struck with four closed fist punches by Officer Kutylo as he laid on the ground. In order to get better positioning to place on the handcuffs, Officer Kutylo grabbed Mr. Walton's left arm, from behind, extending it in a chicken wing position, extending it farther than normal range of motion. At the same time, Officer Gladden continued his carotid control hold. Officers were still not able to place handcuffs on Mr. Walton. Officer Kutylo then punched Mr. Walton an additional four to six times. At this, Mr. Walton went limp, as Officers rendered him unconscious.

  17. At this time, Officers Call and McCormick arrive on scene. Mr. Walton began to regain consciousness. Officer Call immediately delivered two closed fist punches to Mr. Walton's back. Officer Gladden continued to apply the carotid control hold which rendered Mr. Walton unconscious a second time. Officers placed the handcuffs on and Mr. Walton was treated by CCFD Engine 2 and Rescue 3 for injuries. He was transported via ambulance to Southern California Hospital, located at 3828 Delmas Terrace, Culver City, California.

18. Mr. Walton was treated by Dr. Yvonne Maywether. She diagnosed Mr. Walton with acute "syncope (passing out) after choke hold by police". She noted Mr. Walton had difficulty speaking, as she explained it, it was due to a "karate control hold placed on [Plaintiff] after a traffic stop" (See Exhibit A - pg. 3). The whites of Mr. Walton's eyes had become red; the left more so than the right. Mr. Walton's eyes were watering, inflamed, and irritated. (See Exhibit A - pg. 3). Mr. Walton complained of neck and shoulder pain. Dr. Maywhether prescribed Mr. Walton pain killers and he was then released into police custody.

19. Mr. Walton was issued a ticket for misdemeanor obstruction of a Police Officer and was released.

20. Even after having been seen at Southern California Hospital at Culver City, Mr. Walton was still experiencing significant pain and felt something was wrong with the whites of his eyes as they began to change from a slight red color, from when he was initially treated, to the next day and it was for the worst. Mr. Walton's eyes had become blood red in color, almost completely covering the white of each eye. His neck also continued hurting to the point where he could not relax or rest because of the intense pain. The next day, February 5, 2017, Mr. Walton went to Olympia Medical Center, located at 5900 W. Olympic Blvd., Los Angeles, California. Mr. Walton was seen by Dr. Bharat Kothakota in the Emergency Department of OMC. He was diagnosed with a cervical strain and released.

21. Mr. Walton suffered a cervical sprain, was diagnosed with acute syncope with reddening of the whites of the eyes and swelling of the conjunctiva of his left eye.

22. Mr. Walton is still experiencing symptoms from the injuries he sustained from Defendant officers' take down of his person. These symptoms include, but are not limited to, eyesight deterioration, chronic headaches, migraines, back, neck, and shoulder pains, memory loss, inability to speak, mental anguish, and PTSD.

23. Mr. Walton was deprived of his interests protected by the Constitution or laws of the United States, and defendants caused all such deprivations while acting under color of state law.

24. All acts or omissions alleged to have been engaged by any individual defendants were committed with evil motive and intent, and in callous, reckless, and wanton disregard to the individual rights of Mr. Walton.

## COUNT ONE
## UNREASONABLE SEARCH AND SEIZURE - EXCESSIVE FORCE
## (42 U.S.C. § 1983) (Against Defendants KUTYLO, GLADDEN, MCCORMICK, CALL, and DOES 1 through 10)

25. The allegations set forth in paragraphs 1 through 24 are incorporated herein by reference.

26. Defendants Kutylo, Gladden, McCormick, Call, and DOES 1 through 10, while working as agents for Culver City Chief of Police Scott Bixby and the City and acting within the course and scope of their duties, assaulted Plaintiff, Terry Walton, multiple times, with the intent of inflicting serious injury long after Plaintiff was in a prone position and posed no threat to the Officers or those around him. Defendants Kutylo and Call struck Mr. Walton multiple times with closed-fists while he was laying on the ground on his stomach. Defendant Gladden applied a carotid chokehold to Mr. Walton throughout the entire incident, from when Mr. Walton exited his vehicle up until the point he completely passed out for the second time and he finally freed Mr. Walton's neck. All aforementioned acts were in violation of Mr. Walton's right to be secure in his person against an unreasonable seizure guaranteed by the Fourth Amendment to the United States Constitution.

27. As a result of this conduct, defendants are liable to Mr. Walton for his injuries, because they were integral participants in their reckless conduct.

28. Mr. Walton is informed and believes and hereon alleges that the acts of the individual defendants were willful, malicious, intentional, oppressive, reckless, and/or were done in willful and conscious disregard of his rights, welfare, and safety, thereby

justifying the awarding of punitive and exemplary damages in an amount to be determined at the time of trial.

## COUNT TWO
### MONELL LIABILITY FOR CUSTOM, POLICY, AND PRACTICE
### (42 U.S.C. § 1983) (Against Defendant CULVER CITY and CULVER CITY CHIEF OF POLICE SCOTT BIXBY)

29. The allegations set forth in paragraphs 1 through 24 are incorporated herein by reference.

30. At all times herein mentioned the defendants Kutylo, Gladden, McCormick, Call, and DOES 1 through 10 were employees of the City, acting under the direction and control of defendant City and Culver City Chief of Police Scott Bixby. Defendants City and Scott Bixby knowingly and intentionally promulgated, maintained, applied, enforced and suffered the continuation of policies, customs, practices and usages in violation of the Fourth and Fourteenth Amendments to the United States Constitution. These customs, policies, practices and usages required and encouraged the employment, deployment and retention of persons, as peace officers, who have a propensity for violence, excessive force, dishonesty, and additional abuses of their duties as peace officers in the employment of the City and Scott Bixby.

31. Defendants City and Scott Bixby knowingly maintained or permitted an official policy or custom of permitting the occurrences of the types of wrongs alleged herein by, among other things, failing and refusing to meaningfully investigate or discipline Police Officers known to have repeatedly violated the constitutional rights of the public.

32. Additionally, Defendants City and Chief of Police Scott Bixby have displayed a deliberate indifference to the rights of citizens and, based upon the principles set forth in *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), the y are liable for all injuries sustained by Plaintiff as set forth herein.

33. Defendants City and Scott Bixby bear liability because their policies, practices and/or customs were a cause of Plaintiff's injuries. Defendants City, Scott Bixby, and

their officials maintained or permitted a policy, practice and custom of permitting, encouraging and ratifying the use of unnecessary and unreasonable force, false arrest and acting with reckless indifference to the constitutional rights of members of the public by its police officers by, among other things:

    a. Failing to discipline Officers known to have a propensity for violence, the use of unnecessary and unreasonable force, false arrest and/or dishonesty;

    b. Continuing to assign such officers to duties where they are likely to, and indeed do, injure members of the public;

    c. Writing false reports and giving false testimony to cover up acts of misconduct, including, but not limited to, the use of unnecessary force, false arrest and/or dishonesty by its officers and thereby conveying to them its approval and/or lack of concern about police misconduct;

    d. Refusing to discipline adequately individual Officers and employees found to have committed similar acts of abuse and misconduct;

    e. Refusing to investigate competently and impartially allegations of abuse and misconduct alleged to have been committed by Culver City Police Department employees, including the allegations made by Plaintiff in this case;

    f. Planting evidence or withholding evidence in favor of the participant officers to favor the same officers' version of the police misconduct;

    g. Reprimanding, threatening, intimidating, demoting firing and otherwise retaliating against officers who reported acts of abuse by other officers;

    h. Rewarding peace officers who displayed aggressive and abusive behavior toward detainees, arrestees, and members of the public;

    i. Condoning and participating in the practice of reducing or dismissing criminal charges against individuals in return for releasing the

City and employees of the Culver City Police Department from civil liability;

j. Condoning and encouraging officers' beliefs that they can violate the rights of persons such as the Plaintiff with impunity, and that such conduct will not adversely affect their opportunities for promotion and other employment benefits;

k. Promoting and/or acquiescing in the policy of stopping, detaining, questioning, and arresting members of the public without probable cause or reasonable suspicion;

l. Sanctioning, condoning and approving a department wide code of silence, a euphemism for perjury and dishonesty by peace officers;

m. Ratifying by the highest levels of authority the specific unconstitutional acts alleged in this Complaint.

34. On or about February 4, 2017, and for some time prior thereto, defendants City and Culver City Chief of Police Scott Bixby knew or should have known that defendants had propensities for violence, dishonesty, and for abusing their authority but failed to discipline, and ratified, acquiesced in, authorized, or directed the violent acts and abuses of power committed by those Officers.

35. As a direct and legal result of the aforementioned wrongful acts of each individual defendant, and the aforementioned policy, pattern, practice or custom of the City and Scott Bixby, defendants violated the rights of Mr. Walton was guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

36. Defendants' acts and omissions as herein alleged proximately caused Mr. Walton's injuries.

37. As a direct and legal result of defendants' acts and omissions, and the injuries of Mr. Walton, he has suffered damages, including, without limitation, medical expenses, and the past and future pain and suffering, all to his general and special

damages according to proof, including attorneys' fees, costs of suit, and other pecuniary losses not yet ascertained.

38. By reason of the aforementioned acts and omissions of defendants, Plaintiff was compelled to secure the services of an attorney at law to redress the wrongs described herein. As a result, Plaintiff is indebted and liable for legal costs, including attorneys' fees.

## COUNT THREE
## FAILURE TO TRAIN
### (42 U.S.C. § 1983) (Against Defendant CULVER CITY, CULVER CITY CHIEF OF POLICE SCOTT BIXBY, and DOES 6 through 10)

39. The allegations set forth in paragraphs 1 through 24 are incorporated herein by reference.

40. Defendants City, Culver City Chief of Police Scott Bixby, and DOES 6 through 10 possessed the power and authority to hire and fire employees of the City and based upon information and belief and negligently hired defendants Kutylo, Gladden, McCormick, Call, and DOES 1 through 5, entrusted them with the following duties: protect citizens, conduct reasonable investigations based upon reasonable beliefs that persons have been harmed, or property has been stolen or destroyed, and cause persons who commit crimes on property to be arrested.

41. By virtue of the foregoing, defendants owed Plaintiff a duty of due care, and that duty was breached by defendants' negligent and careless manner in hiring, training, supervising and retaining by, among other things:

    a. Failing to adequately train its officers in the use of force, as well as constitutional limitations in the use of force;

    b. Failing to adequately train its deputies in identifying a person that presents a threat of force or violence, as opposed to one that does not;

    c. Failing to adequately train its deputies in identifying a person that poses an immediate risk of escape, as opposed to one that does not;

      d. Failing to adequately investigate background, training and experience of a officer and his propensity for violence;

      e. Failing to provide adequate supervisory control over the actions of its officers in regard to adequate training, supervision, equipment, planning, oversight, and administration;

      f. Sanctioning, condoning and approving a law enforcement-wide custom and practice of a code of silence, cover-up and dishonesty;

42. As a proximate result of the above alleged negligent hiring, training, and/or supervision, Plaintiff suffered extreme and severe mental anguish, and physical pain, and was placed in great fear of his physical wellbeing. He suffered and will continue to suffer pain, mental anguish, loss of normal life, and disability to his mind and body.

43. As a direct and proximate cause of the aforementioned acts of defendants, Plaintiff was injured as set forth above and is entitled to compensatory damages according to proof at the time of trial. By reason of the aforementioned policies and practices of Defendant City, Scott Bixby, and DOES 6 through 10 Plaintiff was injured in his health, strength and activity, and sustained great injuries and damage as described elsewhere herein.

44. By reason of the aforementioned acts and omissions of the defendants, Plaintiff was compelled to secure the services of an attorney at law to redress the wrongs described herein. As a result, Plaintiff is indebted and liable for legal costs, including attorneys' fees.

### COUNT FOUR
### NEGLIGENT HIRING, TRAINING, SUPERVISION (State)
### (Against Defendant CULVER CITY, CULVER CITY CHIEF OF POLICE SCOTT BIXBY, and DOES 6 through 10)

45. The allegations set forth in paragraphs 1 through 24 are incorporated herein by reference.

46. Defendant City, Culver City Police Department Chief of Police Scott Bixby, and DOES 6 through 10 were negligent in their hiring, training, and supervising of

employees, including but not limited to, Officers Kutylo, Gladden, McCormick, and Call. It was foreseeable that said negligence would result in a workforce whose conduct did not conform to the law.

47. As an actual and proximate result of said negligence, Defendants Culver City, Culver City Police Department Chief of Police Scott Bixby, and DOES 6 through 10's employees battered Plaintiff, inflicting not only serious bodily injuries but also mental and emotional injuries Plaintiff continues to suffer from.

48. Said conduct physically, psychologically, and financially harmed Plaintiff.

49. By reason of the aforementioned acts and omissions of defendants, Mr. Walton was compelled to secure the services of an attorney at law to redress the wrongs described herein. As a result, Mr. Walton is indebted and liable for legal costs, including attorneys' fees

## COUNT FIVE
### BATTERY (State)
**(Against Defendants KUTYLO, GLADDEN, MCCORMICK, CALL, and DOES 1 through 5)**

50. The allegations set forth in paragraphs 1 through 24 are incorporated herein by reference.

51. Defendants Kutylo, Gladden, McCormick, Call, and DOES 1-5, while working as officers for the City police department, and acting within the course and scope of their duties, intentionally used force against Mr. Walton, including but not limited to using a carotid chokehold for an extended period of time, punching, and slamming onto Mr. Walton's chest, despite Mr. Walton not resisting at the time, with such force that he has deteriorating eyesight, memory loss and an inability to retain new memories, PTSD, chronic headaches, neck and shoulder pain, and his throat so swollen and in pain that he has trouble speaking. Kutylo, Gladden, McCormick, Call, and DOES 1-5 had no legal justification for using force against Mr. Walton, and their use of force while carrying out their police officers' duties was unreasonable.

52. Mr. Walton suffered harm, as direct and proximate result of the conduct of Kutylo, Gladden, McCormick, Call, and DOES 1-5 as alleged above.

53. City and Scott Bixby are vicariously liable for the wrongful acts of Kutylo, Gladden, McCormick, Call, and DOES 1-5 pursuant to section 815.2 of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

54. The conduct of Kutylo, Gladden, McCormick, Call, and DOES 1-5 was malicious, wanton, oppressive, and accomplished with a conscious disregard for Mr. Walton's rights, entitling Mr. Walton to an award of exemplary and punitive damages.

55. Mr. Walton also seeks general and special damages under this claim.

## COUNT SIX
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (State)
### (Against All Defendants)

56. The allegations set forth in paragraphs 1 through 24 are incorporated herein by reference.

57. Defendants Kutylo, Gladden, McCormick, Call, and DOES 1-10's conduct, as set forth above, was outrageous, malicious and reckless.

58. Defendants intended to cause Plaintiff physical injury and emotional distress and they each acted with reckless disregard of the probability that Plaintiff would suffer emotional distress, knowing that Plaintiff was present when the conduct occurred. Defendants Kutylo, Gladden, McCormick, Call, and DOES 1-10's conduct caused Plaintiff's severe emotional distress.

59. Plaintiff suffered physical injury, severe and sustained emotional distress to be proved at time of trial.

## COUNT SEVEN
## NEGLIGENCE (State)
### (Against All Defendants - Common Law and G.C. §844.6(d))

60. The allegations set forth in paragraphs 1 through 24 are incorporated herein by reference.

61. Defendants, and each of them, have a duty to protect and serve the citizens in a manner so as to prevent the acts and/or omissions alleged herein. Kutylo, Gladden, McCormick, Call, and DOES 1-10 owed Plaintiff, as a person in defendant's custody, care and control, a duty of due care to protect his health and physical safety.

62. Defendants were negligent and their conduct fell below a reasonable standard of care when they failed to discharge their duties as custodians to Plaintiff. It was foreseeable that as a result of Defendants' acts and omissions, as described above, Plaintiff would suffer harm resulting in his physical injury and suffering. Defendants' breach proximately caused injuries and damages to Plaintiff as claimed herein. Defendants were negligent pursuant to California Government Code § 844.6(d).

63. California Government Code §844.6 (d) states in pertinent part:

"***Nothing in this section exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission.*** The public entity may but is not required to pay any judgment, compromise or settlement, or may but is not required to indemnify any public employee, in any case where the public entity is immune from liability under this section; except that the public entity shall pay, as provided in Article 4 (commencing with Section 825) of Chapter 1 of this part, any judgment based on a claim against a public employee who is lawfully engaged in the practice of one of the healing arts under any law of this state for malpractice arising from an act or omission in the scope of his employment, and shall pay any compromise or settlement of a claim or action, based on such malpractice, to which the public entity has agreed."

64. As a direct and proximate result of the Defendants' aforementioned conduct, Mr. Walton, sets forth that the defendants are liable to him for all damages set for herein.

///
///

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendants as follows:

    a. For special and general damages, including loss of earnings, medical costs, and interest, in an amount according to proof;

    b. For punitive damages against the individual defendants in an amount to be proven at trial;

    c. For reasonable costs of this suit and attorneys' fees pursuant 42 U.S.C. § 1988; and

    d. For such further relief as the Court may deem just, proper, and appropriate.

Dated: March 13, 2018          THE SEHAT LAW FIRM, PLC

                                     By: */S/ Cameron Sehat*
                                       Attorney for Plaintiff,
                                       Terry Walton

# EXHIBIT A: SOUTHERN CALIFORNIA HOSPITAL AT CULVER CITY EMERGENCY DEPARTMENT REPORT EXCERPT

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

## Southern California Hospital at Culver City

3828 Delmas Terrace Culver City, CA 90231
(310) 836-7000

Printed 02/04/2017 21:13

| Patient Name | Age | DOB | Gender | Race | Admitting Weight | Admitting Height | Medical Record | Account |
|---|---|---|---|---|---|---|---|---|
| WALTON, TERRY | 33 yrs | 10/22/1983 | Male | BLACK | 113.40kg | 190.50cm | 2068927 | 500195857 |

**Insurance** CULVER CITY POLICE DEPT     **Reg. Date** 02/04/2017 14:27  **Adm. Date** 02/04/2017 14:27  **Room** ED:M3-

**Allergies** No Known Allergies

# MD Notes

**MD Name** Maywether, Yvonne          **Date Of Note** 02/04/2017 14:50          **Note Type** EMERGENCY

### History / Subjective

HPI Paragraph: Patient with syncope after choke hold by police. The Onset is Acute. The symptoms are Moderate. Additional Symptoms or Pertinent History also involve ..
Other Notes: ROS positive for pt comes in police custody s/p syncope and difficulty speaking due to a karate control hold placed on the pt after a traffic stop.,
Review of Systems NOT Covered in HPI:
ENT: Pos,Heart: Neg,Resp: Neg,GI: Neg,GU: Neg,Skin: Neg,Neuro: Neg,Psych: Neg,Musculoskeletal: Neg,Endocrine: Neg,Hematologic/Lymphatic: Neg,Allergic/Immunologic: Neg,Constitutional Sxs: Neg,Eyes: Neg,

### Exam / Objective

Date/Time of Exam: 02/04/2017 14:50:30 MD Name: Maywether, Yvonne
GA: Awake A&Ox3, shaky, hoarse voice, mod distress
Skin: No pallor/ rashes warm & moist
HEENT: PERRL EOMI, R eye: mild redness inferiorly of sclera; L eye:mod redness and chemosis, Moist Mucous Membranes No Icterus
Neck: tenderness to anterior, no swelling or discoloration Full ROM No JVD
Lung/Chest Wall: Lungs-Lungs CTA No Ret/Chest Wall-Chest Wall NT
Cardio Vascular: RRR No M
Abdomen: Palpation-Tenderness-None/BS-BS-NL/No Bruits/Abd Appearance-No Pulsating Masses
Neuro: Motor-Movement all Ext/Sensory-/Coordination-
Back: NT no CVAT
GU:
Extremity: Location-Shoulder B/Palpation- No Tenderness/Sub Location-/Appearance-/ROMFull AROM/ PROM/Pulses- Normal
Lymphatics:
Functional Status:
Cognitive Status:

REPEAT/ADDITIONAL EXAMS:
02/04/2017 14:50:30 Maywether, Yvonne  - Reviewed pertinent diagnostic tests, vital signs, and clinical notes
02/04/2017 21:05:00 Maywether, Yvonne  - pt feels better but is hoarse
02/04/2017 21:06:00 Maywether, Yvonne  - No Sx(s) or Objective findings that are life or limb threatening. Medically Screened and Stable for disposition (Transfer) from the unit.